Case 4:25-cr-00305   Document 1   Filed on 06/10/25 in TXSD   Page 1 of 14

United States Courts
Southern District of Texas
FILED
*June 10, 2025*
Nathan Ochsner, Clerk of Court

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § § | |
| v. § § | Criminal No. **4:25-cr-305** _____ UNDER SEAL |
| **RICHARD ROSE,** § **AVAYETTA MONTEGUE,** § **PORSHETTE BOYKIN,** § **TYISHA ROBINSON, and** § **BYRON CLARK,** § § § | |
| **Defendants.** § | |

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances were defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse and a currently accepted medical use in treatment in the United States, or the drug had a currently accepted medical use with severe restrictions.

4. Pursuant to the CSA and its implementing regulations:

    a. Oxycodone was classified as a Schedule II controlled substance. Oxycodone was used to treat severe pain and, as with other opioids, was highly addictive. Oxycodone HCL 30 mg ("oxycodone 30 mg") tablets were sometimes marketed under the brand name Roxicodone, yielding the street name "Roxy," or "Roxies." The 30 mg pill was the highest, short-acting pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

    b. Hydrocodone was classified as a Schedule II controlled substance. Hydrocodone was used to treat severe pain and, as with other opioids, was highly addictive. Tablets combining 10mg of hydrocodone bitartrate and 325 mg of acetaminophen ("hydrocodone 10-325 mg") was sometimes marketed under the brand name Norco. The 10-325 mg pill was the highest, short-acting combination-pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

    c. "Potentiators," so-called because they enhanced the high from opioids like hydrocodone and oxycodone, included carisoprodol, a Schedule IV controlled substance classified as a muscle relaxant. Carisoprodol 350 mg pills had substantial street value and were in high demand on Houston's black market.

5. With exceptions not applicable here, only appropriately licensed and registered pharmacies could dispense controlled substances, and only pursuant to prescriptions issued for a legitimate medical purpose by an appropriately licensed and registered practitioner acting in the usual course of his professional practice. *See* 21 C.F.R. §§ 1306.04 and 1306.06. The issuing physician and the pharmacist who filled the prescription for a controlled substance shared a corresponding responsibility for its proper prescribing and dispensing. *See* 21 C.F.R. § 1306.04. In addition, Section 1306.04 instructs that

[a]n order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of Section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

6. Rule § 291.29 of the Texas Administrative Code required that a "pharmacist shall make every reasonable effort to prevent inappropriate dispensing due to fraudulent, forged, invalid, or medically inappropriate prescriptions in violation of a pharmacist's corresponding responsibility."

## DEFENDANTS, RELEVANT INDIVIDUALS, AND ENTITIES

7. Defendant **RICHARD ROSE** owned and operated pharmacies, including Independent Pharmacy Services, LLC, dba Live Rite Pharmacy, located at 3695 Kirby Drive, Pearland, Texas ("LIVE RITE") and Liberty Pharmaceutical Services, LLC, dba Meds4Less Pharmacy, located at 4227 Avenue H, Ste. C, Rosenberg, Texas ("MEDS4LESS").

8. Defendant **AVAYETTA MONTEGUE** was a pharmacist licensed with the Texas State Board of Pharmacy ("TSBP"). **AVAYETTA MONTEGUE** was the Pharmacist-in-Charge ("PIC") at LIVE RITE and MEDS4LESS.

9. Defendant **PORSHETTE BOYKIN** was a pharmacy technician licensed with TSBP. **PORSHETTE BOYKIN** operated as the manager of LIVE RITE, overseeing day-to-day operations including ordering controlled substances for LIVE RITE, arranging for controlled substances to be picked up by drug traffickers, and collecting cash for deposit into nominee bank accounts.

10. Defendant **TYISHA ROBINSON** was a pharmacy technician licensed with TSBP. **TYISHA ROBINSON** assisted with the operation of LIVE RITE and eventually became a pharmacy technician at MEDS4LESS. At both pharmacies, she had substantially similar duties and responsibilities to **PORSHETTE BOYKIN**.

11. Defendant **BYRON CLARK** was a drug trafficker who illegally obtained controlled substances to sell onto the black market, in the Houston area and elsewhere.

12. Collectively, **RICHARD ROSE**, **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, **TYISHA ROBINSON**, **BYRON CLARK**, and other co-conspirators involved with their drug trafficking organization ("DTO"), both known and unknown to the Grand Jury, are the "ROSE DTO." Collectively, LIVE RITE and MEDS4LESS are the "ROSE DTO PHARMACIES."

13. Wholesalers, often through independent sales representatives, sold the ROSE DTO PHARMACIES large quantities of oxycodone, hydrocodone, and carisoprodol which were illegally distributed and dispensed and sold onto the black market.

## COUNT ONE
### Conspiracy to Unlawfully Distribute and Dispense Controlled Substances
### (21 U.S.C. § 846)

14. Paragraphs 1 through 13 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

15. From in or around October 2018, and continuing through on or about June 3, 2021, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**RICHARD ROSE,
AVAYETTA MONTEGUE,
PORSHETTE BOYKIN,
TYISHA ROBINSON, and
BYRON CLARK**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(2), that is, to knowingly and intentionally distribute and dispense, mixtures and substances containing detectable amounts of controlled substances, including hydrocodone and oxycodone, each a Schedule II controlled substance, and carisoprodol, a Schedule IV controlled substance, knowing and intending that such distribution was unauthorized.

### Purpose of the Conspiracy

16. It was the purpose of the conspiracy for **RICHARD ROSE**, **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, **TYISHA ROBINSON**, **BYRON CLARK**, and other members of the ROSE DTO to unlawfully enrich themselves by, among other things: (a) trafficking in controlled substances, including hydrocodone, oxycodone and carisoprodol, that **RICHARD ROSE**, **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, **TYISHA ROBINSON**, **BYRON CLARK**, and other members of the ROSE DTO distributed and dispensed, and caused to be distributed and dispensed, unlawfully; (b) generating large profits from trafficking in controlled substances; and (c) diverting the proceeds from those controlled substance sales for the personal use and benefit of **RICHARD ROSE** and other members of the ROSE DTO.

**Manner and Means of the Conspiracy**

The manner and means by which **RICHARD ROSE**, **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, **TYISHA ROBINSON**, **BYRON CLARK**, other members of the ROSE DTO sought to accomplish the purpose and object of the conspiracy included, among other things:

17. **RICHARD ROSE** maintained and caused to be maintained Texas Pharmacy Licenses from the TSBP and registrations with U.S. Drug Enforcement Administration ("DEA Registrations") for the ROSE DTO PHARMACIES and employed a licensed pharmacist, **AVAYETTA MONTEGUE**, as the PIC to give the pharmacies a veneer of legitimacy.

18. **PORSHETTE BOYKIN** and **TYISHA ROBINSON** performed certain day-to-day operations for the ROSE DTO PHARMACIES, including:

   a. Placing orders on behalf of the ROSE DTO PHARMACIES—with wholesalers and their representatives for controlled substances including hydrocodone, oxycodone, and carisoprodol;

   b. Receiving for the ROSE DTO PHARMACIES, and causing to be received by the ROSE DTO PHARMACIES, illegitimate prescriptions for controlled substances that they knew were issued outside the usual course of professional practice, and without any legitimate medical purpose;

   c. Liaising with drug traffickers to arrange for drug traffickers to pick up the pills that the ROSE DTO PHARMACIES dispensed pursuant to illegitimate prescriptions; and

   d. Depositing cash proceeds from the illegal sales of these controlled substances into nominee bank accounts controlled by **RICHARD ROSE**.

19. **AVAYETTA MONTEGUE** unlawfully distributed and dispensed controlled substances, including oxycodone, hydrocodone, and carisoprodol. **AVAYETTA MONTEGUE** did so by filling prescriptions that she knew and understood were issued outside the usual course of professional practice, and without any legitimate medical purpose, often in batches provided directly to drug traffickers. **AVAYETTA MONTEGUE** knew and understood that the drug traffickers, including **BYRON CLARK**, were posing as drivers for groups of purported patients. **RICHARD ROSE, AVAYETTA MONTEGUE, PORSHETTE BOYKIN, TYISHA ROBINSON,** and **BYRON CLARK** knew the purported prescriptions were issued by the purported clinics and clinicians outside the usual course of professional practice, and without any legitimate medical purpose.

20. **BYRON CLARK** and other drug traffickers with the ROSE DTO recruited people to pose as purported patients, often under assumed identities, to obtain illegitimate prescriptions for controlled substances. To accomplish this, **BYRON CLARK** and others performing a similar role would take purported patients to pain clinics that would issue prescriptions for controlled substances that were medically unnecessary, sometimes coaching the purported patients on what they needed to do or say to obtain the prescriptions. **BYRON CLARK** and others would then take patients to LIVE RITE and other ROSE DTO PHARMACIES to fill the prescriptions, which they paid for in cash. **BYRON CLARK** and the other traffickers would subsequently sell the controlled substances they purchased from the ROSE DTO to street-level users and dealers.

21. Even after **AVAYETTA MONTEGUE**, **RICHARD ROSE**, **PORSHETTE BOYKIN**, and **TYISHA ROBINSON** were specifically made aware by the TSBP of numerous reasons that **AVAYETTA MONTEGUE's** dispensing at the ROSE DTO PHARMACIES was non-therapeutic—i.e., that it involved prescriptions issued without a legitimate medical purpose,

7

outside the usual course of professional practice—in violation of **AVAYETTA MONTEGUE's** corresponding responsibility as a pharmacist, **RICHARD ROSE**, **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, and **TYISHA ROBINSON** continued to distribute and dispense, and cause to be distributed and dispensed—from the ROSE DTO PHARMACIES—hydrocodone, oxycodone, and carisoprodol, in substantially the same manner they knew involved prescriptions issued outside the usual course of professional practice, and without any legitimate medical purpose.

22.     **RICHARD ROSE**, and other members of the ROSE DTO, maintained the physical premises at LIVE RITE, not for the purpose of conducting legitimate pharmacy business, but as a front to illegally distribute and dispense controlled substances to drug traffickers, while avoiding detection by law enforcement.

23.     Through LIVE RITE, **RICHARD ROSE**, **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, **TYISHA ROBINSON**, and other members of the ROSE DTO purchased and caused to be purchased at least approximately 566,000 combined pills of hydrocodone 10-325 mg and oxycodone 30 mg, and at least approximately 51,874 pills of carisoprodol 350 mg, during the brief time LIVE RITE operated.

24.     **RICHARD ROSE** used the proceeds from their illegal cash sales of hydrocodone, oxycodone, and carisoprodol acquired through the ROSE DTO PHARMACIES to pay himself, and to pay **AVAYETTA MONTEGUE**, **PORSHETTE BOYKIN**, and **TYISHA ROBINSON**.

25.     **RICHARD ROSE, AVAYETTA MONTEGUE, PORSHETTE BOYKIN, TYISHA ROBINSON**, and other members of the ROSE DTO disposed of the cash they obtained from the ROSE DTO PHARMACIES in a manner designed to conceal **RICHARD ROSE** and

their other co-conspirators' involvement in the ROSE DTO, and to conceal the source of the proceeds, including in the manner described in paragraphs 28-32.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
### Conspiracy to Launder Monetary Instruments
### (18 U.S.C. § 1956(h) – Money Laundering Concealment)

26. Paragraphs 1 through 13 and 17 through 25 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

27. From in or around October 2018, and continuing through on or about June 3, 2021, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**RICHARD ROSE,
PORSHETTE BOYKIN, and
TYISHA ROBINSON**

did knowingly combine, conspire, and agree with each other and other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846; and Unlawfully Distributing and Dispensing, and Possessing with the Intent to Distribute and Dispense, a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(2); knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i).

### Manner and Means of the Conspiracy

The manner and means by which **RICHARD ROSE, PORSHETTE BOYKIN, TYISHA ROBINSON**, and others known and unknown to the Grand Jury sought to accomplish the purpose and object of the conspiracy included, among other things:

28. **RICHARD ROSE** controlled bank accounts at different financial institutions that were not in his own name, in order to conceal and disguise the source of the proceeds—i.e., the co-conspirators' illegal distribution and dispensing of oxycodone, hydrocodone, and carisoprodol—and **RICHARD ROSE's** beneficial ownership of said proceeds.

29. **RICHARD ROSE, PORSHETTE BOYKIN, TYISHA ROBINSON**, and their co-conspirators used cash derived from their illegal sale of oxycodone, hydrocodone, and carisoprodol to fund money orders which they would deposit in lieu of cash to disguise the illegal source of the proceeds.

30. **RICHARD ROSE, PORSHETTE BOYKIN, TYISHA ROBINSON**, and their co-conspirators made numerous cash deposits into accounts they and their co-conspirators controlled of proceeds from the specified unlawful activity in increments of less than $10,000, "structuring" these deposits at different banks and branches, sometimes on the same day, to avoid the requirement that banks report currency transactions over $10,000.

31. **RICHARD ROSE, PORSHETTE BOYKIN, TYISHA ROBINSON**, and their co-conspirators used cash couriers, or acted themselves as couriers, to deliver cash to co-conspirators and others and to deposit proceeds of criminal activity into nominee bank accounts.

32. **RICHARD ROSE, PORSHETTE BOYKIN, TYISHA ROBINSON**, and their co-conspirators made purchases of legal items and conducted apparently legitimate financial transactions to "wash" cash made off the illegal distribution and dispensing of hydrocodone, oxycodone, and carisoprodol.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS THREE AND FOUR
**Unlawfully Distributing and Dispensing Controlled Substances and Aiding and Abetting**
**(21 U.S.C. § 841 and 18 U.S.C. § 2)**

33. Paragraphs 1 through 13, 17 through 25, and 28 through 32 are re-alleged and incorporated by reference as though fully set forth herein.

34. On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**RICHARD ROSE,
AVAYETTA MONTEGUE, and
BYRON CLARK**

aiding and abetting and aided and abetted by each other, and others, did knowingly, intentionally, and unlawfully distribute and dispense, the controlled substances alleged below, knowing and intending that such distribution and dispensing was unauthorized:

| Count | Medications Involved | Drug Schedule | Approx. Amount | Approx. Date |
|---|---|---|---|---|
| 3 | Hydrocodone 10-325mg | II | 110 pills | May 25, 2021 |
| 4 | Carisoprodol 350 mg | IV | 90 pills | May 25, 2021 |

In violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(2), and Title 18, United States Code, Section 2.

11

## NOTICE OF CRIMINAL FORFEITURE
### (21 U.S.C. § 853)

35. The allegations contained in Counts 1, 3, and 4 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

36. Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841 and 846, Defendants

**RICHARD ROSE,
AVAYETTA MONTEGUE,
PORSHETTE BOYKIN,
TYISHA ROBINSON, and
BYRON CLARK**

shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

37. If any of the property described above, as a result of any act or omission of Defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(1))

38. The allegations contained in Count 2 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

39. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and 1957, Defendants

**RICHARD ROSE,**
**PORSHETTE BOYKIN, and**
**TYISHA ROBINSON**

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

40. If any of the property described above, as a result of any act or omission of Defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

*Continued on next page…*

                                                A TRUE BILL

                                          **Original Signature on File**

                                                  FOREPERSON

NICHOLAS J. GANJEI
ACTING UNITED STATES ATTORNEY

LORINDA LARYEA
ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

_____
ERIKA V. SUHR
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE